**HOMESTEAD FINANCE CORPORATION, Appellant–Defendant,**

v.

**SOUTHWOOD MANOR L.P. d/b/a Village Green of Southwood Manor and d/b/a Village Green Mobile Home Park, Appellee–Plaintiff.**

No. 71A04–1103–CC–167.

Court of Appeals of Indiana.

Oct. 26, 2011.

Matthew A. Yeakey, Sanders ● Pianowski, LLP, Elkhart, IN, Attorney for Appellant.

Michael A. Trippel, Phillip A. Garrett, Thorne Grodnik, LLP, Mishawaka, IN, Attorneys for Appellee.

**OPINION**

BRADFORD, Judge.

Appellant–Defendant Homestead Finance Corporation appeals from the trial court's grant of summary judgment in favor of Appellee–Plaintiff Southwood Manor L.P. d/b/a as both Village Green of Southwood Manor and Village Green Mobile Home Park (collectively, "Village Green"). Homestead contends that the trial court erred in granting Village Green's summary judgment motion and in denying its summary judgment motion. We reverse and remand with instructions.

**FACTS**

The relevant facts are undisputed. Village Green operates a mobile home park in Mishawaka and, from time to time, Homestead has provided financing to tenants for the purchase of mobile homes. As a result of its financing, Homestead acquired a security interest in these mobile homes. Three mobile homes in which Homestead had a perfected security interest were those purchased by Evonne Stemm, Beverly Ellsworth, and Jimmy W. Wolf, Sr. (collectively, "the owners"), all of whom eventually vacated Village Green and defaulted under the terms of their lease agreements with Village Green.

Between September 11, 2006, and April 19, 2010, Village Green notified Homestead that the owners had vacated their properties and that their rents were delinquent. In response to all three notices, Home-

stead mailed to Village Green original certificates of title to each mobile home along with notices that it was releasing its liens on the mobile homes. On October 13, 2006, Village Green purchased the Ellsworth residence at an auction it conducted pursuant to the Innkeeper's Lien Statute, and it was torn down in July of 2007. On December 29, 2009, Village Green purchased the Wolf residence at an innkeeper's lien auction and there is no indication in the record that it has been removed from its lot. There is no indication in the record that any transfer of ownership in the Stemm residence has occurred or that the mobile home has been removed from its lot.

On June 23, 2010, Village Green sued Homestead, claiming, pursuant to Indiana Code section 16–41–27–29 (2009) ("the Park Owner's Lien Statute"), that Homestead owed back lot rent under the terms of Village Green's leases with the owners, as well as any future rent that might accrue until Homestead removed the mobile homes. On November 18, 2010, Village Green filed a summary judgment motion. On December 21, 2010, Homestead filed a summary judgment motion. On February 15, 2011, the trial court granted Village Green's motion for summary judgment and denied Homestead's.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

Both parties argue that the language of the Park Owner's Lien Statute requires the entry of summary judgment in their favor. "The interpretation of a statute is a question of law reserved for the courts." *Scott v. Irmeger*, 859 N.E.2d 1238, 1239 (Ind.Ct.App.2007).

A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. Courts are not bound to adopt a construction that would lead to manifest absurdity in order that the strict letter of the statute may be adhered to. They will rather look to the

intention of the legislature, as gathered from the import of the whole act, and will carry out such intention as thus obtained.

*Fuller v. State,* 752 N.E.2d 235, 237–38 (Ind.Ct.App.2001) (citations omitted).

The Park Owner's Lien Statute provides as follows:

(a) Subject to subsection (b), the owner, operator, or caretaker of a mobile home community has a lien upon the property of a guest in the same manner, for the same purposes, and subject to the same restrictions as an innkeeper's lien or a hotel keeper's lien.

(b) With regard to a lienholder:

(1) if the property has a properly perfected secured interest under IC 9–17–6–7; and

(2) the lienholder has notified the owner, operator, or caretaker of the mobile home community of the lienholder's lien by certified mail; the maximum amount of the innkeeper's lien may not exceed the actual late rent owed for not more than a maximum of sixty (60) days immediately preceding notification by certified mail to the lienholder that the owner of the property has vacated the property or is delinquent in the owner's rent.

(c) If the notification to the lienholder under subsection (b) informs the lienholder that the lienholder will be responsible to the owner, operator, or caretaker of the mobile home community for payment of rent from the time the notice is received until the mobile home or manufactured home is removed from the mobile home community, the lienholder is liable for the payment of rent that accrues after the notification.

Homestead does not dispute that it was a lienholder on the mobile homes in question when it received notices of vacation or delinquency. Homestead argues, however, that once it released its liens, it was no longer subject to the Park Owner's Lien Statute and, therefore, no longer obligated to pay Village Green any additional accruing lot rents. Village Green counters that under the language of the Park Owner's Lien Statute, once it sent its notices pursuant to subsection (b), Homestead was essentially "locked in" as a "lienholder" under subsection (c), regardless of whether it actually had a lien on the mobile homes, so long as they remain on their lots.

As Village Green points out, a strict reading of the Park Owner's Lien Statute suggests that one is a "lienholder" from the time one receives notice under subsection (b) and that "lienholder" status can only be terminated by removal of the mobile home from its lot. Village Green's suggested interpretation of the Park Owner's Lien Statute, however, would require us to attach meanings to language that would be unique to the statute, lead to absurd and unjust results, and would clearly be against public policy.

Village Green is essentially asking us to conclude that, for purposes of the Park Owner's Lien Statute, "lienholder" does not mean "one who currently holds a lien," but, rather, means "one who holds a lien or held a lien at some point in the past but received notice of vacancy or delinquency under subsection (b) before releasing its lien." There is no indication, however, that the legislature intended the word "lienholder" to mean anything other than its plain meaning in the Park Owner's Lien Statute, *i.e.,* anything other than "one who currently holds a lien." Absent a clear legislative intent, we cannot endorse an interpretation of the Park Owner's Lien Statute that includes someone who is not a lienholder within its definition of "lienholder." If the legislature had meant to have the mailing of the notice of vacancy or

delinquency fix a lienholder's liability for future rents, even in the event the lien is released, it could have easily done so.

Moreover, adoption of Village Green's suggested interpretation of the Park Owner's Lien Statute would lead to what we believe are absurd results. Village Green would have us hold that Homestead should be liable for accruing rent indefinitely until such time as the mobile homes are removed from the lot. Now that Homestead has released its liens on the mobile homes, however, it no longer has any right to remove them. Taking Village Green's argument to its logical extreme, it can now simply allow the mobile homes to remain on their lots while collecting rent from Homestead indefinitely, and there is nothing Homestead can do about it. We do not believe that the legislature intended this result when drafting the Park Owner's Lien Statute.

Finally, contrary to Village Green's arguments, we fail to see how adopting its argument advances any rational policy objective. Village Green argues that its interpretation of the Park Owner's Lien Statute advances the policy goal of removing vacant mobile homes. We shall assume that removal of vacant mobile homes from mobile home parks, at least if they are no longer habitable, is a desirable policy objective. Village Green, however, does not explain how its interpretation of the Park Owner's Lien Statute advances this policy. If anything, as explained above, Village Green's proposed interpretation would *discourage* the removal of vacant mobile homes rather than encourage it.

Essentially, the only real policy that adoption of Village Green's argument would advance would be to shift the burden of removing some worthless mobile homes from mobile home park owners to lenders. This shifting does not seem to us to be a worthy policy objective, for at least two reasons. First, we fail to see why lenders should bear the primary risk of breaches of lease agreements to which they are not even parties, especially when mobile home park owners or operators are obviously in a much better position to assess that risk. If we were to adopt Village Green's position, mobile home park owners would have little incentive to thoroughly vet potential renters in situations where they would not bear the risk of a default. Second, placing the burden of removal on lenders would almost certainly make it far more difficult to obtain financing for a mobile home. So, far from advancing worthy policy objectives, we think that adoption of Village Green's position would likely discourage removal of uninhabitable mobile homes from mobile home parks, encourage reckless business practices by mobile home park operators, and make it more difficult to obtain financing for the purchase of a mobile home.

### CONCLUSION

We conclude that Homestead was no longer subject to the Park Owner's Lien statute once it released its liens on the mobile homes in question. As such, we reverse and remand with instructions to enter judgment in favor of Homestead such that it is not liable for any lot rent that accrued for any of the three lots in question after it released its liens on the mobile homes.

We reverse the judgment of the trial court and remand with instructions.

ROBB, C.J., and BARNES, J., concur.