# FOR PUBLICATION



FILED

Feb 16 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID A. KRUSE**
Kruse & Kruse, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**MARK W. BAEVERSTAD**
**ANDREW L. PALMISON**
Rothberg Logan & Warsco LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAYMOND DALE BERRYHILL, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1108-SC-400 |
| | ) | |
| PARKVIEW HOSPITAL, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Jerry L. Ummel, Magistrate
Cause No. 02D01-0908-SC-17061

**February 16, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Raymond Dale Berryhill, who had suffered a stroke and other health problems, became agitated and fought with his wife. His family persuaded him to go to the emergency room at Parkview Hospital ("Parkview"), where he voluntarily checked himself in and underwent some medical tests. Berryhill became loud and aggressive. Berryhill's physician was concerned that he might be a danger to himself or others, so he ordered him to be taken to a secured room and sedated. Two Parkview security guards tried to calm Berryhill down, but he resisted and demanded to go home, so they escorted him to the secured room and placed him in restraints. After Berryhill's outburst, his wife filed an application for Berryhill to be detained and examined at Parkview Behavioral Health, from which he was released two days later.

Berryhill sued Parkview, alleging that the security guards' actions constituted false imprisonment. The trial court concluded that Parkview was immune from liability based on a statute that covers persons who assist in detentions. Berryhill now appeals, claiming that the immunity statute does not apply because he was not detained for purposes of the statute until after his wife filed the application for detention. We disagree with Berryhill and affirm the trial court's judgment.

**Facts and Procedural History**

The facts most favorable to the trial court's judgment are that on August 25, 2007, Berryhill became agitated and argued with his wife, Kay. They fought over the TV remote control, and Berryhill grabbed Kay's arm and pushed her onto the bed. At approximately

2

11:20 a.m., Kay called 911. According to the 911 incident report, Kay requested an ambulance for Berryhill "due to his head hurting from a prior stroke and brain surgery" and informed the operator that he "also battered her during the incident." Plaintiff's Ex. 1. Emergency workers and police officers arrived at the Berryhills' home. The emergency workers tried to persuade Berryhill to go to the emergency room, but he declined. The police officers asked Kay if she wanted to have Berryhill arrested, and she declined. The emergency workers and police officers then left the Berryhills' home.

Eventually, the Berryhills' son persuaded Berryhill to go to the hospital, and he drove his parents, wife, and daughter to Parkview's emergency room, where they arrived at approximately 3:55 p.m. Berryhill told the triage nurse that he had come because his wife thought that he was "nuts" and wanted to commit him to the "psycho ward." Defendant's Ex. C at 316. He said that he felt OK and denied feeling any pain or weakness. Kay told the nurse that she was "worried" and that she "needed to see that he had some kind of tests or MRI's or scans or something." Tr. at 9.[1] At 4:10 p.m., Berryhill signed an "Authorization to Treat" form, which reads in pertinent part, "I hereby authorize the healthcare providers involved with my healthcare to perform that medical treatment and those medical procedures, which are necessary and appropriate. *I understand that the physicians caring for me are*

---

[1] We direct the court reporter's attention to Indiana Appellate Rule 28(A), which states that the title page of each volume of the transcript "shall conform to Form #App.R. 28-1" and that the transcript's table of contents "shall be a separately bound volume." Ind. Appellate Rule 28(A)(7) and -(8). Also, we direct Berryhill's counsel's attention to Indiana Appellate Rule 50(F), which says, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

*independent healthcare providers and not employees of the facility.*" Defendant's Ex. C at 382 (emphasis added).

At 4:44 p.m., emergency physician Dr. Gregg Pollander entered Berryhill's treatment room.[2] Dr. Pollander spoke with Berryhill and spoke separately with Berryhill's wife and family. Dr. Pollander documented Berryhill's medical history, including a stroke and cranial surgery for subdural hematomas. Dr. Pollander also documented Berryhill's anger issues and the events leading to his emergency room visit.[3] Dr. Pollander ordered a CT scan and a blood test to determine whether there was a medical cause for Berryhill's "anger outbursts." *Id*. at 331. As Dr. Pollander expected, the tests did not reveal any medical explanation for Berryhill's behavior. At approximately 5:13 p.m., Berryhill underwent a brief clinical assessment by Ocleva Williams of Parkview Behavioral Health,[4] who documented Berryhill's medical and anger issues.

At approximately 5:45 p.m., Berryhill "became very angry, aggressive, and loud," *id*. at 329, and Dr. Pollander was concerned that he might "hurt himself or others." Tr. at 52.

---

[2] In his reply brief, Berryhill asserts that Dr. Pollander is Parkview's agent but cites no relevant authority for this assertion.

[3] Dr. Pollander's notes indicate that Berryhill

> presented to the emergency department for evaluation of anger issues.… He has a lifelong problem with anger, but since his stroke in November 2004, it has accelerated. In the last day or days, it has accelerated even more. It is to the point that he injured his wife's arm slightly today.

Defendant's Ex. C at 331.

[4] We presume that Parkview Behavioral Health is affiliated with Parkview, but the nature of that affiliation is unclear from the record before us.

Dr. Pollander ordered that Berryhill be taken to a secured room and administered a "small dose of intravenous Geodon," a relaxant. *Id*. Pursuant to Dr. Pollander's order, two Parkview security guards approached the "agitated" Berryhill and attempted to calm him down and persuade him to enter the secured room voluntarily. *Id*. at 65. Berryhill demanded to go home and said that he would have to be "forced into the room." *Id*. at 68. The guards placed the "combative" Berryhill in a "two man control hold," escorted him to the secured room, and placed him on a bed in restraints "for his safety and safety of staff." *Id*. at 68, 66, 69. Berryhill was given Geodon and eventually calmed down, after which his restraints were removed.

At some point after Berryhill's outburst, Kay signed an "Application for Emergency Detention" form that reads in relevant part as follows:

> I, the undersigned, firmly believe that the above-named person [Berryhill] is mentally ill, dangerous and in need of immediate restraint for the following reasons: *Mr. Berryhill became violent with his wife earlier today. She stated that since his head injury in March she has seen an increase in anger and rage in her husband. She reports that today was the worse [sic]. He grabbed her, hit her and was out of control. He became violent in the ER and was put in 4pt restraints and given Giodon [sic]. Mr. Berryhill is a danger to others in his current state.*
>
> I therefore petition the Court for an order that the above-named person be immediately taken into custody to be examined to determine whether said person is mentally ill and in need of commitment for care and treatment.
>
> I affirm under penalties for perjury that the foregoing representations are true.
>
> Dated this *25th* day of *August*, *2007*.

Plaintiff's Ex. 3 at 379 (emphases added). The italicized words are handwritten.

5

Also at some point after Berryhill's outburst, Dr. Pollander signed a medical statement that reads in relevant part as follows:

I, the undersigned, under the penalties for perjury, hereby state that I am a licensed physician in the State of Indiana and am of the opinion that *Raymond D. Berryhill* may be mentally ill and dangerous and is in need of immediate restraint in *Parkview Behavioral Health…* for the following reasons:

*Patient, Raymond Berry [sic], was brought to the ER because his wife was afraid he would hurt her. He had become violent towards her earlier today. Once he was calmed down she encouraged him to come to [the] ER. In [the] ER he became violent and was put in four-point restraints and given Geodon. This [patient] is a danger to others and need[s] to be admitted to PBH for a thorough evaluation. This [patient] is dangerous due to a head injury.*

This statement is based on an examination of the patient/information given me about the patient.

Dated this *25* day of *August*, *2007*.

*Id*. at 380 (emphases added). Again, the italicized words are handwritten.

At 8:05 p.m., Judge David Avery issued a verbal order for Berryhill to be taken to Parkview Behavioral Health and held for seventy-two hours for an examination. At 9:11 p.m., a police officer transported Berryhill to Parkview Behavioral Health. On August 26, 2007, Berryhill was examined by psychiatrist Dr. Gladys Beale, who recommended that he be detained at least one more day for observation. On August 27, 2007, Dr. Beale determined that Berryhill was "calm" and "in a good enough state emotionally in judgment to be able to be discharged." Tr. at 84-85.

In August 2009, Berryhill filed a notice of claim against Parkview, in which he alleged that he "was held against [his] will, kidnapped, abused, improper restraints and given

6

a shot all against [his] will on 8-25-07." Appellant's App. at 32. Berryhill later named

additional defendants, including Dr. Pollander, all of whom were dropped from the case. A

small claims bench trial was held in November 2010, at which Berryhill did not appear for

medical reasons. On November 22, 2010, the trial court issued a judgment in favor of

Parkview. On December 20, 2010, Berryhill filed a motion to correct error. On July 22,

2011, the trial court issued an amended judgment that reads in pertinent part as follows:

> 1. The Plaintiff became agitated and apparently was suffering from head pain on August 25, 2007. On that date he was involved in an altercation with his spouse and was eventually transferred to Parkview Hospital by a family member.

> 2. After arriving at the hospital the Plaintiff once again became violent and had to be subdued by hospital security. On that day the Plaintiff's spouse Kay Berryhill, signed an Application for Emergency Detention.

> 3. The Plaintiff argues that the Defendant [sic] attempted to leave the hospital on his own before he was forcibly subdued. There was very little evidence submitted by either party regarding this attempt to leave the hospital.

> 4. Under I.C. § 12-26-2-6 in order for the Plaintiff to recover they [sic] would have to show that the Defendant acted with malice, bad faith or negligence in this action. The Court finds that the Plaintiff failed to carry the burden of proving any malice, bad faith or negligence and therefore, the Plaintiff cannot recover.

*Id*. at 23. Berryhill now appeals.

**Discussion and Decision**

Our standard of review in small claims cases is well settled:

> [S]mall claims court judgments are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Pursuant to Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of

7

the trial court to assess witness credibility. This deferential standard of review is particularly important in small claims actions, where trials are designed to speedily dispense justice by applying substantive law between the parties in an informal setting. We also note that the parties in a small claims court bear the same burdens of proof as they would in a regular civil action on the same issues. Ind. Small Claims Rule 4(A). It is incumbent upon the party who bears the burden of proof to demonstrate that it is entitled to the recovery sought. We consider evidence in the light most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. We will reverse a judgment only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion.

However, we note that this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction.

*Hastetter v. Fetter Props., LLC*, 873 N.E.2d 679, 682-83 (Ind. Ct. App. 2007) (some citations omitted).

The gist of Berryhill's claim against Parkview is false imprisonment, which has been defined as "the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003).[5] Berryhill argues that the trial court erred in finding that "[t]here was very little evidence submitted by either party" regarding his alleged attempt to leave the hospital before he was restrained by the security guards. Appellant's App. at 23. We agree with Berryhill on this point. Kay testified that Berryhill "was going to leave" the hospital, Tr. at 10, as did one

---

[5] At trial, Kay testified that Berryhill suffered injuries and incurred medical expenses as a result of the security guards' actions, but on appeal Berryhill does not claim that the guards committed battery or used excessive force.

8

of the security guards,[6] and Berryhill swore out an affidavit to this effect.[7] Parkview did not offer any contrary evidence.[8] As such, the evidence is undisputed that Berryhill attempted to leave the hospital but was restrained by Parkview's security guards.

The question then becomes whether Berryhill was unlawfully restrained.[9] After Berryhill's outburst in the emergency room, Kay signed an application for detention pursuant to Indiana Code Section 12-26-5-1, which says:

> (a) An individual may be detained in a facility for not more than seventy-two (72) hours under this chapter, excluding Saturdays, Sundays, and legal holidays, if a written application for detention is filed with the facility. The individual may not be detained in a state institution unless the detention is instituted by the state institution.
> (b) An application under subsection (a) must contain both of the following:
> (1) A statement of the applicant's belief that the individual is:
> (A) mentally ill and either dangerous or gravely disabled;[10] and

---

[6] *See* Tr. at 74 ("Q: …. [D]o you have any personal knowledge that after the tests [Berryhill] wanted to leave and started to leave the hospital? A: Yes. Q: And at that point you were told to secure him? A: Correct.").

[7] *See* Plaintiff's Ex. 2 ("I thought I checked myself in I could check my self [sic] out…. I walked out of the treatment room where two security guards grabbed me one on each side. 'I said I just want to go home.' I repeatedly said 'I just want to go home.'").

[8] Dr. Pollander testified that he did not "know one way or the other" whether Berryhill had asked to leave the hospital. Tr. at 58.

[9] To the extent Parkview suggests that the restraint was not unlawful because Berryhill signed a treatment authorization form and the security guards restrained him pursuant to Dr. Pollander's order, we agree with Berryhill that "[a] consent for voluntary treatment does not forfeit the patient's right to end the treatment and leave." Appellant's Reply Br. at 7.

> > > (B) in need of immediate restraint.
> >
> > (2) A statement by at least one (1) physician that, based on:
> >
> > > (A) an examination; or
> > >
> > > (B) information given the physician;
>
> the individual may be mentally ill and either dangerous or gravely disabled.

Indiana Code Section 12-26-2-6 provides:

> > (a) A person who without malice, bad faith, or negligence acts according to this article and:
> >
> > > (1) participates in proceedings for the detention or commitment of an individual; or
> > >
> > > (2) assists in the detention, care, and treatment of an individual alleged or adjudged to have a mental illness;
> >
> > is immune from any civil or criminal liability that might otherwise be imposed as a result of the person's actions.
> >
> > (b) The immunity provided by this section does not permit a person to do either of the following:
> >
> > > (1) Physically abuse an individual.
> > >
> > > (2) Deprive an individual of a personal or civil right except according to this article.

In its amended judgment, the trial court determined that Parkview was entitled to immunity from Berryhill's false imprisonment claim pursuant to Indiana Code Section 12-26-2-6 because Berryhill failed to establish that Parkview (through its employees, the security

---

[10] For purposes of Indiana Code Article 12-26, "mental illness" means "a psychiatric disorder that: (A) substantially disturbs an individual's thinking, feeling, or behavior; and (B) impairs the individual's ability to function. The term includes mental retardation, alcoholism, and addiction to narcotics or dangerous drugs." Ind. Code § 12-7-2-130. "Dangerous" means "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others. " Ind. Code § 12-7-2-53. "Gravely disabled" means

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
> > (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
> > (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96.

guards) acted with malice, bad faith, or negligence, presumably while "act[ing] according to" Indiana Code Article 12-26 and "assist[ing] in the detention, care, and treatment" of Berryhill.

Berryhill does not challenge the legality of the detention itself.[11] Rather, Berryhill contends that he was illegally restrained before he was detained pursuant to Indiana Code Section 12-26-5-1. More specifically, Berryhill argues that he could not have been detained before the application for detention was filed, which did not occur until after he was restrained by the security guards.[12] In other words, Berryhill argues that a person cannot be considered detained for purposes of Indiana Code Section 12-26-5-1 until *after* an application is filed. Similarly, Berryhill contends that Parkview is not entitled to immunity pursuant to Indiana Code Section 12-26-2-6 because he was restrained before he was detained for purposes of Indiana Code Section 12-26-5-1. We disagree.

> We have said that our objective when construing a statute
>
> is to ascertain and give effect to the legislative intent and to interpret the statute in such a manner as to prevent absurdity and to advance public convenience. In so doing, we must be mindful of the purpose of the statute, as well as the effect of such an interpretation. We presume that our legislature intended its language be applied in a logical manner consistent with the underlying goals and policy of the statute.

---

[11] Berryhill's counsel conceded as much when questioning Kay at trial. *See* Tr. at 43 ("Q: … [Y]ou're not challenging that commitment proceedings [sic] as such, what you're concerned with and [Berryhill's] concerned with is the restraining of him and not letting him leave the hospital. He voluntarily checked in and he wanted to leave. Instead of letting him leave they restrained him, that's the gist of your complaint, is that correct? A: That's correct.").

[12] The record is silent regarding whether the application was filed with Parkview, where the application was completed, or Parkview Behavioral Health, where Berryhill was transported. Because the parties do not distinguish these facilities for purposes of either the detention statutes in general or Berryhill's detention in particular, neither do we.

11

*KPMG, Peat Marwick, LLP v. Carmel Fin. Corp.*, 784 N.E.2d 1057, 1060 (Ind. Ct. App. 2003) (citations omitted). We have also said that

> [s]tatutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. Courts are not bound to adopt a construction that would lead to manifest absurdity in order that the strict letter of the statute may be adhered to. They will rather look to the intention of the legislature, as gathered from the import of the whole act, and will carry out such intention as thus obtained.

*Homestead Fin. Corp. v. Southwood Manor LP*, 956 N.E.2d 183, 184-85 (Ind. Ct. App. 2011) (citation omitted). Moreover, "[i]t can be just as important to recognize what a statute does not say as to recognize what it does say." *Town of Dyer v. Town of St. John*, 919 N.E.2d 1196, 1202 (Ind. Ct. App. 2010). The construction of a statute is a pure question of law. *Pannell v. Penfold*, 848 N.E.2d 1130, 1132 (Ind. Ct. App. 2006), *trans. denied*.

Reduced to its essence, Indiana Code Section 12-26-5-1(a) says that "[a]n individual may be detained in a facility for not more than seventy-two (72) hours … *if* a written application for detention is filed with the facility." (Emphasis added.) Notably, the statute does not say that an individual may not be detained until *after* a written application for detention is filed. Indeed, the statute does not specify when the written application must be filed. In this case, the application for detention was based primarily on the very behavior that led to Berryhill being restrained by Parkview's security guards. We cannot conclude that the legislature intended to leave healthcare facilities and their employees powerless to detain individuals who are mentally ill and either dangerous or gravely disabled before an application for detention is filed. As such, without deciding precisely when Berryhill was detained for purposes of Indiana Code Section 12-26-5-1, we conclude that the security

12

guards "act[ed] according to" Indiana Code Article 12-26, which governs the voluntary and involuntary treatment of mentally ill individuals, and "assist[ed] in the detention, care, and treatment of an individual alleged … to have a mental illness" for purposes of Indiana Code Section 12-26-2-6(a). There is no evidence that the guards acted with malice, bad faith, or negligence (or physically abused Berryhill or deprived him of a personal or civil right except according to Indiana Code Article 12-26), and therefore we conclude that Parkview is entitled to immunity from Berryhill's false imprisonment claim. Accordingly, we affirm the trial court's judgment in favor of Parkview.[13]

Affirmed.

MAY, J., and BROWN, J., concur.

---

[13] Given our resolution of this case, we need not address Parkview's arguments regarding the applicability of Indiana Code Section 12-26-5-3, which says, "An individual detained under this chapter may be examined and given emergency treatment necessary to do the following: (1) Preserve the health and safety of the individual. (2) Protect other persons and property."