**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEANNE M. HAMILTON**
Doninger Tuohy & Bailey LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HOOSIER ENTERPRISES VII, LLC, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  45A04-1303-SC-105 |
| | ) | |
| DIAMOND VENDING, INC., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Michael Pagano, Magistrate
Cause No. 45D09-1208-SC-2218

**August 20, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Diamond Vending, Inc. sued Hoosier Enterprises VII, LLC ("HE VII"), in small claims court for breach of a contract for the placement of Diamond Vending's vending machines in a nursing facility operated by HE VII. HE VII appeals the trial court's judgment against it in the amount of $6,000.00, raising two issues for our review, which we consolidate and restate as one: whether the trial court's judgment against HE VII is clearly erroneous. Concluding the judgment is not erroneous because HE VII's performance of the contract was not impossible, we affirm.

## Facts and Procedural History

At least since February 2008, Lowell Health Care Center in Lowell, Indiana, was leased and operated by HE VII. On February 11, 2008, a "Service Location Agreement" was entered into by Diamond Vending, as "Operator," and Lowell Health Care, as "Location," for the installation and service of three vending machines at Lowell Health Care facilities. Part of the agreement was that:

> This AGREEMENT shall bind the parties and their assigns, and the LOCATION agrees to notify any prospective purchaser of said existence of this AGREEMENT and to provide of the assumption of this AGREEMENT by the new purchaser.

Exhibit 1. The agreement also provided that it would be in effect for a period of two years, and would renew automatically for a like period and under the same terms and conditions, "unless either party gives the other written notice . . . of it's [sic] intention to cancel said AGREEMENT, prior to sixty (60) days of the expiration of this AGREEMENT or any renewal period thereof." Id.

2

Neither party gave written notice to cancel the service location agreement by December 11, 2009, and the agreement therefore automatically renewed for the period February 11, 2010 to February 10, 2012. Again, neither party gave written notice to cancel by December 11, 2011, and the contract automatically renewed from February 11, 2012 to February 10, 2014. However, as of the close of business on December 31, 2011, HE VII's lease of Lowell Health Care Center was terminated and the Health and Hospital Corporation of Marion County ("HHC") took over the operations of the facility under a new lease with the owner of the real estate and improvements. As is standard in the industry, HE VII and HHC entered into an "Operations Transfer Agreement" detailing the transfer of operations of the facility to ensure continuity of patient care. See Exhibit A. One provision of the operations transfer agreement provided, with respect to contracts:

> Within ten (10) days after execution of this Agreement, [HE VII] shall provide [HHC] with all vendor, service and other operating contracts for the Facilities . . . . Within ten (10) days after receipt of the Facility Contracts, [HHC] will notify [HE VII] in writing which Facility Contracts, if any, [HHC] will assume (the "Assumed Facility Contracts"). Effective as of the Closing Date, [HE VII] shall assign, and [HHC] shall assume and agree to be bound by all of the terms and conditions of, the Assumed Facility Contracts . . . . [HE VII] will indemnify, defend and hold [HHC] harmless against any and all losses, penalties, judgments, suits, costs, claims, liabilities, damages, settlements and expenses . . . incurred by, imposed upon or asserted against [HHC] as a result of, relating to or arising out of any obligations under (a) the Assumed Facility Contracts relating to the period prior to the Closing Date, even if the same do not arise until after the Closing Date, or (b) any Facility Contracts that are not Assumed Facility Contracts. . . .

Exhibit 3 at 11. There is no evidence in the record regarding HE VII's and HHC's conduct regarding this provision with respect to the service location agreement, but it is apparent that after closing, HHC expressed that it did not want to use Diamond Vending's services under

the terms of the service location agreement. After efforts to renegotiate failed, Diamond Vending removed its vending machines from the facility in March 2012.

Diamond Vending filed a small claims complaint against HE VII,[1] seeking damages of $6,000.00, for breach of the service location agreement. At the bench trial, Diamond Vending offered the testimony of Devin Smith, president of Diamond Vending, and introduced into evidence the service location agreement, a document showing Diamond Vending's calculation of its damages, and the operations transfer agreement between HE VII and HHC. HE VII introduced into evidence an affidavit of the director of business development for HE VII, explaining the expiration of HE VII's lease, that as of the effective date of HHC's lease of the facility, HE VII "had no authority to transact any business for the Facility or make any decisions on behalf of the Facility[,]" and that it "had no ability to force the new tenant to assume any contract." Exhibit A. The trial court entered judgment in favor of Diamond Vending in the amount of $6,000.00:

> . . . I just don't think impossibility is appropriate here. . . . At best I've got a characterization that Lowell decided it did not want to continue with its lease. And I don't think that's adequate to get them off the hook for their responsibility under their contract with Diamond Vending. To just say, walk away and say, well, it's not our problem any more. I don't, I don't think on the facts I have in front of me, impossibility is applicable.

Transcript at 69-70. HE VII now appeals.

---

[1] Several entities were apparently named as defendants in the original complaint. The record before us contains neither the complaint nor the chronological case summary, see Ind. Appellate Rule 50(A)(2), and therefore we cannot detail these entities or the disposition as to each. Nonetheless, by the time the bench trial

4

## Discussion and Decision

### I. Standard of Review

Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to our review of facts determined in a bench trial with due regard given to the trial court's opportunity to judge the credibility of the witnesses. In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. Eagle Aircraft, Inc. v. Trojnar, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013). A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that a reasonable trier of fact could conclude the elements of the party's claim were established by a preponderance of evidence. Id. This deferential standard of review is particularly important in small claims actions, where trials are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A); Berryhill v. Parkview Hosp., 962 N.E.2d 685, 689 (Ind. Ct. App. 2012).

Diamond Vending has not filed a brief with this Court. When an appellee fails to submit a brief, an appellant may prevail by making a prima facie case of error. Cochran v. Hoffman, 971 N.E.2d 670, 672 (Ind. Ct. App. 2012). Prima facie error is error at first sight, on first appearance, or on the face of it. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006). Where an appellant is unable to show prima facie error, we will affirm.

concluded, only HE VII remained as a defendant.

5

Id. This rule serves to protect the reviewing court and leave the burden of controverting arguments advanced for reversal with the appellee. Cochran, 971 N.E.2d at 672. Regardless, we remain obligated to correctly apply the law to the facts in order to determine whether reversal is required. Id.

## II. Impossibility of Performance

HE VII contends the trial court's judgment is clearly erroneous because it was impossible as a matter of law and fact for it to perform its obligation under the service location agreement. Specifically, HE VII argues Diamond Vending's recourse is against HHC because as of December 31, 2011, HE VII no longer occupied the premises or operated the facility and it had no ability to force HHC to perform the contract.

Impossibility of performance is an affirmative defense to performance of an executory contract. Bernel v. Bernel, 930 N.E.2d 673, 683 (Ind. Ct. App. 2010), trans. denied.

> We regard it as thoroughly settled that the words of a mere general covenant will not be construed as an undertaking to answer for a subsequent event, happening without the fault of the covenantor, which renders performance of the covenant itself not merely difficult or relatively impossible, but absolutely impossible, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract. Where performance is thus rendered impossible, the inquiry naturally arises as to whether there was a purpose to covenant against such an extraordinary and therefore presumably unapprehended event, the happening of which it was not within the power of the covenantor to prevent.

Marcovich Land Co. v. J.J. Newberry Co., 413 N.E.2d 935, 942 (Ind. Ct. App. 1980) (quoting Krause v. Bd. of Trs. of Sch. Town of Crothersville, 162 Ind. 278, 265 (1904)).

We note first the provision in the service location agreement – to which HE VII, doing business as Lowell Health Care Center, agreed – that it would notify any new purchaser of

6

the existence of the service location agreement and provide for its assumption by the purchaser. We also note the provision in the operations transfer agreement that HE VII was to notify HHC of any existing contracts and that it would hold HHC harmless for any claims arising out of those contracts, whether assumed by HHC or not, for the period prior to the closing date.

Although the vending machines were not removed from the premises until March 2012, the service location agreement had to be cancelled, if at all, by December 11, 2011. The lease between HE VII and the landlord of the premises is not part of the record before us, but it is reasonable to infer that HE VII received notice sometime prior to the transfer of the facility to HHC on December 31, 2011, that its lease was not being renewed. Pursuant to the terms of the service location agreement, HE VII could have given notice to cancel the agreement by December 11, 2011, and it is further reasonable to infer that HE VII knew as of that date that it would not be operating the facility during the effective dates of a renewed service location agreement. Having failed to cancel the agreement, it was obligated both by the service location agreement and the operations transfer agreement to bring the agreement to the attention of HHC. There is no evidence in the record that it did so. But whether it did or not, it is apparent that HHC did not assume the agreement, and that the breach of the agreement occurred on December 11, 2011, when it was not cancelled for the upcoming term. In short, as the trial court noted, HE VII's performance of the agreement did not become "impossible" through no fault of its own. In the language of Krause, the breach of the agreement was in HE VII's "power to prevent." 162 Ind. at 265. HE VII has failed to

7

make a prima facie showing that the trial court clearly erred in entering judgment against on Diamond Vending's complaint for damages.

Conclusion

The trial court's judgment in this small claims action was not clearly erroneous, and the judgment against HE VII is therefore affirmed.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.