## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 15 2016, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William Perry McCall, III
Mosley Bertrand and McCall
Jeffersonville, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pinnacle Properties Development Group, LLC, <br> *Appellant-Defendant,* <br><br> v. <br><br> David Daily, <br> *Appellee-Plaintiff.* | July 15, 2016 <br><br> Court of Appeals Case No. 10A01-1512-SC-2275 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Kenneth R. Abbott, Magistrate <br><br> Trial Court Cause No. 10C03-1507-SC-1153 |

**Crone, Judge.**

## Statement of the Case

[1] Pinnacle Properties Development Group, LLC ("Pinnacle") appeals a $752.37 judgment in favor of residential tenant David Daily in his small claims action

for breach of contract.[1]  On appeal, Pinnacle asserts that the trial court erred when it concluded that Pinnacle breached its contract with Daily and also that the court abused its discretion in awarding Daily certain damages.  Finding no error or abuse of discretion, we affirm.

## Facts and Procedural History

[2]  On October 16, 2014, Daily executed a Lease Agreement ("the Lease") with Pinnacle to rent an apartment located in Jeffersonville.  Prior to executing the Lease, Daily had an opportunity to inspect the apartment, and he had an opportunity to read the Lease.  The Lease provided, in relevant part:

9.      Alterations and Maintenance of Leased Premises

* * *

B.  Tenant shall immediately notify Landlord, in writing, of any damage to the Leased Premises.

C.  Landlord, within a reasonable time after written notice from Tenant of the need therefore, and subject to Tenant's obligation to make the Leased Premises available as set out above, shall

---

[1] We note that Pinnacle failed to submit an appendix on appeal which presumably would have included a copy of Daily's small claims complaint.  Indiana Appellate Rule 49(B) states that a party's "failure to include any item in an Appendix shall not waive any issue or argument."  Even so, Appellate Rule 49(A) clearly contemplates that an appendix will be filed:  "The appellant *shall* file its Appendix with its appellant's brief." (Emphasis added.)  Similarly, Appellate Rule 50(A)(1) reads, "The purpose of an Appendix in civil appeals ... is to present the Court with copies of only those parts of the record on appeal that are necessary for the Court to decide the issues presented."  In addition to the chronological case summary, appealed order, pleadings, and various other documents, Rule 50(A)(2) requires that the appendix include "other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]"

make all repairs necessary to maintain the exterior and structural walls, structural floors (excluding floor coverings), HVAC systems, foundations, roof, gutters, and exterior downspouts of the Leased Premises in the same condition they are now in, except to the extent that the acts or omissions of any one of the Occupants necessitates such repairs. Tenant shall be responsible for the cost of all other repairs not required to be made by Landlord to maintain the Leased Premises in at least as good a condition as it is now in. . . . Notwithstanding Tenant's obligation for the costs of repairs hereunder, nothing in this Lease shall be deemed or construed to constitute a consent to, or a request to any party for the performance of, any labor or services or the furnishing of any materials or equipment for the improvement, alteration, or repairing of the Leased Premises;

\* \* \*

D. Notwithstanding the above, if the Leased Premises is damaged by flood, wind, rain, fire, or other destructive act of God such that the Leased Premises is uninhabitable for any length of time, Landlord shall have ninety (90) days from receipt of notice from Tenant within which to repair and restore the Leased Premises without terminating this lease, it being agreed that Landlord shall not be liable to Occupants for any damage to Occupants or Occupant's property. If a part of the Leased Premises shall be damaged as mentioned above, but not so as to render the entire Leased Premises uninhabitable, the Monthly Rent shall abate in proportion to that part of the Leased Premises which is uninhabitable. If the damage to the Leased Premises shall be so extensive as to render the entire Leased Premises wholly uninhabitable, the Monthly Rent shall cease from the time the Landlord is notified, in writing, of such damages until the Leased Premises is restored to a habitable condition; and, after the Leased Premises are so restored, the Monthly Rent shall begin to accrue again and be payable as before the damage.

Daily's Ex. 3 at 7-8. In addition to the written Lease, the record indicates that Pinnacle provided Daily with a phone number to call in the event of an emergency.

[3] From the date of the execution of the Lease in October 2014 to June 2015, Daily did not experience any incidents of flooding in the leased premises. However, beginning on June 26, 2015, Daily experienced substantial periodic flooding through the patio door of the leased premises. The flooding happened on June 26, July 2, July 12, and July 14. After each incident of flooding, Daily called Pinnacle's emergency telephone number to report the flooding. On June 26, he did not reach a live person at the emergency number so he left a voice mail message informing Pinnacle of the flooding. Daily received no response to that message. Daily borrowed a wet/dry vacuum and removed thirty gallons of water from the leased premises on June 26.

[4] On July 2, Daily again called Pinnacle's emergency telephone number, and he reported the second flooding. The person who answered the telephone told Daily that there was nothing Pinnacle could do about the flooding, but that she would "send someone out" to the premises. Tr. at 38. However, no one from Pinnacle ever came to the leased premises. Daily removed twelve gallons of water from the premises with a borrowed wet/dry vacuum.

[5] On July 12, Daily again called Pinnacle to report flooding, and he was again told that there was nothing Pinnacle could do about the problem but that they would send someone over to his unit. Once again no one from Pinnacle came

to the leased premises, and Daily removed the water on his own with a borrowed wet/dry vacuum. He removed forty gallons of water.

[6] On July 14, Daily personally went to the Pinnacle management office to report the fourth flooding. He showed the Pinnacle employee pictures of the flooding. Pinnacle put a "work order" into their system but, again, no one from Pinnacle came to the leased premises. *Id*. at 46. This time Daily bought a wet/dry vacuum for $53.37 because he believed the flooding would continue without any remedial action from Pinnacle. Daily removed twenty-five gallons of water from the leased premises on July 14.

[7] Daily continued to live in the leased premises. However, on July 22, Daily filed a complaint against Pinnacle in small claims court, seeking damages in the amount of $3,330.68. Following a hearing, the trial court entered judgment for Daily in the amount of $699 for the rent Daily had paid for the month of July and $53.37 for the cost of the wet/dry vacuum Daily had purchased, plus court costs and post-judgment interest. This appeal ensued.

## Discussion and Decision

[8] Initially we note that Daily has failed to file an appellee's brief. Therefore, the trial court's decision may be reversed upon a showing of prima facie error. Ind. Appellate Rule 45(D); *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006) (holding that, when the appellee has failed to submit an answer brief, the court on appeal need not undertake the burden of developing an argument on

the appellee's behalf; rather, the court on appeal will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error).

[9] Our standard of review in a small-claims court case is clear:

> Small-claims court judgments are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. This deferential standard of review is particularly important in small-claims actions, where trials are designed to speedily dispense justice by applying substantive law between the parties in an informal setting. *Berryhill v. Parkview Hosp.*, 962 N.E.2d 685, 689 (Ind. Ct. App. 2012). But this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. *Id.*

*Vance v. Lozano*, 981 N.E.2d 554, 557-58 (Ind. Ct. App. 2012).

[10] In awarding Daily $699 for the rent he had paid in July, the trial court essentially concluded that Pinnacle breached its Lease with Daily by failing to repair the damage from the flooding. Pinnacle claims this was error. Indiana courts have recognized the contractual nature of leases and the applicability of the law of contracts to leases. *See, e.g.*, *Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1129 (Ind. Ct. App. 2011), *trans. denied*. A lease is interpreted in the same way as any other contract. *Indiana Port Comm'n v. Consol. Grain and Barge Co.*, 701 N.E.2d 882, 887 (Ind. Ct. App. 1998), *trans. denied* (1999). The rules of construction of a contract are well-settled:

The ultimate goal of any contract interpretation is to determine the intent of the parties at the time that they made the agreement. *First Fed. Sav. Bank of Indiana v. Key Mkts., Inc.*, 559 N.E.2d 600, 603 (Ind. 1990). We begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole. *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.*, 867 N.E.2d 203, 213 (Ind. Ct. App. 2007). "A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." *Fackler v. Powell*, 891 N.E.2d 1091, 1096 (Ind. Ct. App. 2008)[, *trans. denied* (2009)]. If we find ambiguous terms or provisions in the contract, "we will construe them to determine and give effect to the intent of the parties at the time they entered into the contract." *George S. May Int'l. Co. v. King*, 629 N.E.2d 257, 260 (Ind. Ct. App. 1994) (internal citations omitted), *trans. denied*.

*Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012).

[11] Pinnacle claims that the trial court ignored the provisions in the Lease which required Daily to give Pinnacle written notice of the flooding and which then allowed Pinnacle ninety days within which to make the necessary repairs and restore the property. *See* Daily's Ex. 3 at 8. While we do not necessarily agree with Pinnacle that Daily was required to give written notice to Pinnacle when the flooding rendered the leased premises only partially uninhabitable as contemplated by Paragraph 9(D) of the Lease, we need not reach that issue.[2]

---

[2] Paragraph 9(D) of the Lease provides in relevant part that if "part of the Leased Premises shall be damaged as mentioned above, but not so as to render the entire Leased Premises uninhabitable, the Monthly Rent shall abate in proportion to that part of the Leased Premises which is uninhabitable." *See* Daily's Ex. 3 at 8.

It is well-established that we will affirm a general judgment entered in a small claims case if it can be sustained on any legal theory supported by the evidence. *Collections, Inc. v. Wolfe*, 818 N.E.2d 14, 16 (Ind. Ct. App. 2004). Even if the plain language of the Lease required that Daily give written notice to Pinnacle when the flooding rendered the leased premises only partially uninhabitable, the evidence is undisputed that Pinnacle had actual notice of the flooding, and therefore we would find that Pinnacle is equitably estopped from asserting lack of written notice as a defense to its breach of the Lease. Our supreme court has stated, "Estoppel is a judicial doctrine sounding in equity. Although variously defined, it is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct." *Brown v. Branch*, 758 N.E.2d 48, 51-52 (Ind. 2001). "The doctrine of estoppel springs from equitable principles and is designed to aid in the administration of justice where, without its aid, injustice might result." *Lockett v. Planned Parenthood of Ind., Inc.*, 42 N.E.3d 119, 136 (Ind. Ct. App. 2015), *trans. denied* (2016).

There is no question that injustice would result if Pinnacle were permitted to avoid refunding Daily the rent paid during the period the premises were partially uninhabitable simply because he did not give Pinnacle written notice of the flooding. Daily repeatedly gave Pinnacle actual notice of the flooding. After each flooding incident, he called the specific emergency number provided to him by Pinnacle. He left a message on the first occasion and, on the second occasion, he actually spoke to a live person who said that she would "send

someone out." Tr. at 38. On yet another occasion when he called the emergency number, he spoke to another person who promised to send someone out to his premises. To Daily's obvious detriment, Pinnacle gave Daily false assurances that it would take care of the problem. Daily's reliance on Pinnacle's assurance was unquestionably justified. We can hardly imagine a more appropriate application of the equitable estoppel doctrine. The trial court did not err in concluding that Pinnacle breached the Lease and in awarding Daily $699 for the rent paid during the period of partial uninhabitability.

[14] As a final matter, Pinnacle challenges the trial court's decision to also award Daily $53.37 for the cost of the wet/dry vacuum he purchased. It is well settled that a party injured by a breach of contract is limited in his recovery to the loss actually suffered, and he may not be placed in a better position than he would have enjoyed had the breach not occurred. *Hawa v. Moore*, 947 N.E.2d 421, 427 (Ind. Ct. App. 2011). However, a party injured by a breach of contract may recover consequential damages, namely damages that flow naturally and probably from the breach and were contemplated by the parties when the contract was made. *Rockford Mut. Ins. Co. v. Pirtle*, 911 N.E.2d 60, 67 (Ind. Ct. 2009), *trans. denied* (2010). Our review of a damages award is limited, and we will reverse an award only when it is not within the scope of the evidence before the finder of fact. *Sheek v. Mark A. Morin Logging, Inc.*, 993 N.E.2d 280, 287 (Ind. Ct. App. 2013), *trans. denied* (2014).

[15] Daily testified that after having to scramble around and borrow a wet/dry vacuum on multiple occasions to remove the gallons upon gallons of water

from his apartment when Pinnacle would not, he finally purchased a wet/dry vacuum so that he could mitigate the damage caused by the continued flooding. Clearly, the purchase of the vacuum was a consequential damage arising from Pinnacle's breach of the Lease. Accordingly, the trial court did not abuse its discretion in awarding Daily $53.37 for the cost of the vacuum. The judgment of the trial court is affirmed.

Affirmed.

Najam, J., and Robb, J., concur.